## No. 80SA22

## Michael Motors, Inc., v. Colorado Dealer Licensing Board, State of Colorado

(616 P.2d 110)

Decided September 2, 1980.                    Rehearing denied September 29, 1980.

David Pehr, William Pehr, for plaintiff-appellant.

J. D. MacFarlane, Attorney General, Richard F. Hennessey, Deputy, Mary J. Mullarkey, Solicitor General, Billy Shuman, Special Assistant Attorney General, for defendant-appellee.

*En Banc.*

CHIEF JUSTICE HODGES delivered the opinion of the Court.

The appellant automobile dealer seeks reversal of the trial court's affirmance of the Colorado Dealer Licensing Board's (Board) order suspending its license for 17 days. Several constitutional challenges are raised with regard to the Automobile Dealers Act, sections 12-6-101 to 12-6-124, C.R.S. 1973. Appellant also asserts that the Board's findings, conclusion and order are improper and not supported by the evidence. We reject these challenges and affirm the judgment of the trial court.

The suspension of the appellant's license was based upon the "intentional failure to perform any written agreement with any retail buyer." Section 12-6-118(3)(f), C.R.S. 1973. The record reveals that in late 1978, a prospective buyer came to the premises of appellant, Michael Motors, Inc., pursuant to a sales advertisement. He was greeted by a Mr. Denholm, a salesman, who was alone on the premises, except for several mechanics. Mr. Denholm informed the prospective buyer that the advertised vehicle had been sold, and then proceeded to show him other vehicles for sale. The buyer became interested in a pickup truck and inquired as to the price. Mr. Denholm informed him that the asking price was $1,095. The two men began to negotiate, and finally Mr. Denholm lowered the purchase price to $750.

The buyer then agreed to purchase the truck at this price, and the two men signed a written agreement for the sale of this vehicle. The buyer gave Mr. Denholm a $95.75 deposit and since it was a Saturday, he agreed to return the following week after obtaining the balance of the purchase price from his bank account. The agreement included a line for the buyer's signature and a line for the "MANAGER'S SIGNATURE." Mr. Denholm signed the agreement in the latter location. Below the "MANAGER'S SIGNATURE" line it stated "THIS ORDER MUST BE SIGNED BY AN OFFICIAL OF THE COMPANY."

There is a dispute whether Mr. Denholm did or did not inform the buyer that the agreement was subject to approval of a person other than himself. As to this, the Board found that Mr. Denholm acted as "manager and agent" of the appellant, thereby creating a "written agreement" with a retail buyer. Since there is substantial evidence in the record to support this finding, it will not be rejected on appeal.

The buyer returned to the appellant's place of business the following week to consummate the sale. Although he understood that he had a written agreement, he was informed by the president that the deal would not be completed unless the purchase price was increased. The buyer was informed that the caveat on the agreement required approval of the president of Michael Motors, Inc.; that there was no "manager"; and that only the president approved all agreements. The evidence presented revealed that on the day of this particular agreement, the president was out of town.

The buyer complained to the licensing authority, and the proceedings before the Board were commenced. Following a hearing, it was determined that the plaintiff's license should be suspended for 17 days as a result of its refusal to honor the agreement. The appellant then commenced an action in the trial court challenging the suspension. The district court affirmed the Board's order.

■ The appellant makes two contentions regarding the action of the Board. First, he argues that the evidence does not support the findings of the Board. We disagree. A complete review of the record indicates that there was substantial evidence on the record as a whole to support the findings of the Board. Although Mr. Denholm may not have had actual authority to bind the appellant to the written agreement in this case, under the facts and circumstances as shown in this record, the doctrine of apparent authority is clearly applicable. *See Bowser v. Union Bag Co., Inc.,* 112 Colo. 373, 149 P.2d 800 (1944); *White v. Brock,* 41 Colo. App. 156, 584 P.2d 1224 (1978); *Russell v. First American Mortgage Co.,* 39 Colo. App. 360, 565 P.2d 972 (1977); *Zambruk v. Perlmutter 3rd Generation Builders, Inc.,* 32 Colo. App. 276, 510 P.2d 472 (1973).

■ Second, the appellant argues that the requisite intent under section 12-16-118(3)(f) was not demonstrated because the president refused

to honor the written agreement under the assumption that it was not a valid contract. One of the grounds for suspension of a motor vehicle dealer's license under this statutory provision is "intentional failure to perform any written agreement with any retail buyer." Appellant claims that the intent under the statute is a specific intent which is negated by his assumption that the agreement was not an enforceable contract. We note that the question regarding the contractual nature of the agreement is a question of law, and it is axiomatic that a mistake of law is no defense to the culpability of a person's actions. *See Kirkendoll v. People,* 138 Colo. 267, 331 P.2d 809 (1958). It is therefore clear that even if the president was mistaken as to the enforceability of the written agreement, the Board correctly determined that the appellant, acting through its president, intentionally failed to perform the agreement.

This brings us to the appellant's constitutional challenges to the Automobile Dealers Act. (Sections 12-6-101 to 124, C.R.S. 1973). The challenges can be categorized into two basic areas. The first challenge focuses upon appellant's assumption that the written agreement must be a valid and enforceable contract before the Board can impose a sanction. On this premise, it is asserted that the appellant is deprived of its opportunity to litigate the contractual nature of the agreement in a court of law, thereby violating its right to due process and equal protection. Also, the appellant claims that an issue of law is therefore being resolved by an agency of the executive branch of government in violation of the separation of powers doctrine.

The appellant's position is untenable because the assumption is not supported by the language of section 12-6-118(3)(f). Had the legislature contemplated that the statute apply only to valid and enforceable contracts, it would have so stated. However, it chose to authorize sanctions for the refusal to honor "*any written agreement* with any retail buyer." (Emphasis added.) The enforceability of an agreement need not be found by the Board before it may impose a sanction for violation of the statute.

Appellant's next constitutional challenge relates to the vagueness and overbreadth of section 12-6-118(3)(f). First, we find the application of the statute with regard to the refusal to honor any written agreement with a retail buyer is not overbroad. Such a prohibition clearly fits within the justifiable legislative intent of the Automobile Dealers Act to induce "trust and confidence of the purchaser" in retail transactions, and it does not create a chilling effect upon any constitutionally protected right of an automobile dealer. Nor is the statute unconstitutionally vague. The burden to overcome the presumption of constitutionality in cases such as this is great. *See Beathune v. Colorado Dealer Licensing Board,* 198 Colo. 483, 601 P.2d 1386 (1979). The appellant has failed to overcome this presumption. We find that this subsection is sufficiently clear to place automobile dealers on notice as to what is prohibited and to allow the

uniform enforcement of this provision by the Board.

Judgment affirmed.

JUSTICE LEE does not participate.